## RANDALL *v.* ATLANTA ADVERTISING SERVICE.

Conceding, but not deciding, that the defendant, Atlanta Advertising Service, obtained and held its leasehold to the land subject to "a perpetual right and easement against the land, . . that neither the grantee herein nor its successors or assigns, or the beneficiaries of said trust, their heirs or assigns, or grantor herein, her heirs or assigns, shall ever have the right to erect a building of any character, on any of said land, which shall be nearer North Avenue than forty-two (42) feet, measured from the front curbstone which separates the sidewalk,

from the roadway of said street," under the conflicting evidence the court did not err in refusing the injunction against the erection of a bill-board.

No. 4418.    NOVEMBER 12, 1924.

Petition for injunction.    Before Judge E. D. Thomas.    Fulton superior court.    May 21, 1924.

*Mayson & Johnson,* for plaintiff.

*W. O. Wilson,* for defendant.

GILBERT, J.    The city lot owned by Paul H. Randall and also the city lot of M. W. Thompson, leased to Atlanta Advertising Service, were originally owned by Mrs. Sarah J. Purtell.    The plaintiff, Randall, seeks to enjoin the erection of a billboard by the defendant Advertising Service, on the ground that such a billboard would constitute a "building" such as was contemplated in the building restriction quoted in the headnote, and which was contained in a deed by Mrs. Purtell to a predecessor in title of Randall and included in all of the conveyances in the chain of title under which Randall holds.    The defendant denies that the building restriction is binding as to itself.    We do not think it necessary for a proper determination of the issue in this case to decide that question.    It may be conceded, merely for present purposes, that the building restriction applied to the defendant.    Nevertheless, under the evidence, we are not authorized to reverse the judgment refusing to enjoin the defendant.    "The primary rule for the interpretation of restrictive covenants is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement, but the entire context, and, where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met. . . Restrictions on the use of real property will not be enlarged or extended by construction, and any doubt will be construed in favor of the grantee. . . While the tendency of the courts is to discourage restrictions on the free alienation of property, it is also well settled that deeds and other instruments affecting title to land, like all contracts, are to be interpreted, as nearly as possible, according to the obvious intent of the parties contracting."    Berry on Restrictions on Use of Real Property, 52, 54, 57, and numerous authorities cited.    When it is sought to restrict one in the use of his own private property for any lawful purpose, the ground for such inter-

ference must be clear and indubitable. Randall testified, in regard to the character of the structure which the defendant proposed to erect, as follows: "The building of the structure which is known as a billboard constitutes a permanent structure, in that the posts are sunk deep in the ground so as to resist wind, and, when the posts are covered with wood or tin, would constitute a permanent structure or building on the front of said lot." The testimony just quoted constitutes all that was offered in behalf of the plaintiff in regard to the character of the structure. For the defendant, T. J. Wood testified that he was "familiar with the character of structure being erected on said property, and that said structure is an advertising board which is not of a permanent character as a store would be. The lease attached was called a space contract giving to the Atlanta Advertising Service the right to maintain billboards . . for a year and until said lot was needed for building purposes." This is all of the evidence introduced by the defendant in regard to the character of the structure. Obviously the trial judge was authorized to find, under the evidence, that whatever the character of the structure, it was not permanent. It is reasonable to suppose that the restriction had reference to a permanent "building." The structure proposed to be erected was a billboard. The question, therefore, is reduced to the issue of whether or not a billboard, temporary in character and which, under the contract of lease, could only remain on the land for a period of one year and "until said lot was needed for building purposes," was a building such as was contemplated in the building restriction, assuming, of course, that the restriction applied to the city lot of defendant. A "billboard" is defined as follows: "An erection annexed to the land in the nature of a fence for the purpose of posting advertising, bills and posters." 7 C. J. 1179. A billboard, while "in the nature of," is not necessarily a fence. Conceivably a billboard, under some circumstances, might serve as a fence. In this case it is not shown that the billboard is coextensive with the outside or street boundaries of the lot, such as would be the case if intended to serve as a fence. Whether or not the principles of law applicable are the same as in the case of a fence is discussed because the brief of counsel for plaintiff in error contains references to cases holding that under the facts of such cases a fence was a building. In Swasey v. Shasta County, 141 Cal. 392 (74 Pac.

1031), it was held that under a statute providing that the "county supervisors shall have power, under such limitations as may be provided by law, to provide such public buildings as may be necessary, and that none shall be constructed until plans and specifications shall have been made therefor and adopted by the board, and that all such 'buildings' must be erected by contract let to the lowest responsible bidder, after notice by publication in a newspaper, the board can not let a contract to build a fence around the courthouse without such notice having been given and other provisions of the statute complied with." There the court was looking to the general intent of the statute in regard to restricting public officials in spending public moneys, and the decision construing the intent and purpose was based on the fact that the word "fence" was not excluded from the definition of the word "building." Considering the terms of the statute and the reasoning employed, we do not consider this case as even persuasive authority. Other cases in foreign jurisdictions can doubtless be found which under the particular facts hold that a "billboard" is a "fence," and that a "fence" is a "building." The building restriction in this case inhibits the erection of "a building of any character." What is a "building" in contemplation of building restrictions? The word "building" has no universal, inflexible meaning which will apply in all cases. 1 Bouvier's Law Dictionary (Rawle's ed.) defines "building" as follows: "An edifice erected by art, and fixed upon or over the soil, composed of brick, marble, wood, or other proper substance, connected together, and designed for use in the position in which it is so fixed." In 9 C. J. the word "building" is given various and comprehensive definitions with numerous authorities cited in the footnotes. The reasonable limits within which this opinion must be confined will not permit more than a citation to that admirable work and its copious notes, further than to quote the words in which the matter is there summed up, as follows: "Taken in its broadest sense, it can mean only an erection intended for use and occupation as a habitation or for some purpose of trade, manufacture, ornament or use, constituting a fabric or edifice, such as a house, a store, a church, a shed. What is a building must always be a question of degree." Id. 685. In Berry on Restrictions on Use of Real Property, 98, § 63, "building" is defined as follows: "A building is defined to be a structure in the

nature of a house built where it is to stand; as commonly under-
stood, a house for business, residence, or public use, or for shelter of
animals or storage of goods, and very generally, but not always,
the idea of a habitation for the permanent use of man, or an erec-
tion connected with his permanent use, is implied in the word
'building.' 1 Words & Phrases 889." Among the outside cases,
one where the reasoning appeals most strongly is Clark v. Lee, 185
Mass. 223 (70 N. E. 47). There the restriction was that "no
dwelling or other house or building, or any part thereof or projec-
tion therefrom, should be built on defendant's remaining land,
within a certain distance of the premises conveyed." The com-
plaint was that a wall had been erected on the land, in conflict
with the covenant and contrary to the restriction. In the opinion
it was said "We are of the opinion that the covenant or restriction
applies only to the house to be built upon the land, and not to
a wall, even if the wall extends from the house into the restricted
space. Such a wall as was here built, extending from the house,
can not be deemed to be 'any part of or projection' from the house.
These words evidently refer to bay windows or porches, or things
of that nature. That a wall can not be held to come within the
term 'building' is, in our opinion, conclusively settled by the cases
in this commonwealth. Thus in Truesdell v. Gay, 13 Gray, 311,
it was said by Mr. Justice Bigelow: 'The word "building" can not
be held to include every species of erection on land, such as fences,
gates, or other like structures. Taken in its broadest sense, it can
mean only an erection intended for use and occupation as a hab-
itation, or for some purpose of trade, manufacture, ornament, or
use, constituting a fabric or edifice, such as a house, a store, a
church, a shed.'" The precise question has not been decided in
this State, but in Williams v. State, 105 Ga. 814 (32 S. E. 129,
70 Am. St. R. 82), construing a penal statute with reference to
stealing in "any dwelling-house, store, shop, warehouse, or any
other building," the court said "a building is defined to be 'an edi-
fice for any use; that which is built, as a dwelling-house, barn,
etc.'" Citing Standard Dictionary. Construing the terms of the
restriction, together with the pleadings and the evidence, we think
it is certain that the protection sought by the covenant had refer-
ence to residence and not business property. It will be no stretch
of judicial cognizance to say that the universal rule with regard to

business property, such as stores, is to erect such structures at or near the line of the sidewalk. It would be unreasonable to suppose that a covenant prohibiting the erection of buildings within forty-two feet of the sidewalk had reference to a street used for storehouses or other business structures. We think it is equally clear that the parties, at the time the covenant was agreed upon, did not have in mind a restriction as to the building of fences. Fences erected around dwelling lots, as a general rule, are placed on the property lines. It would be unreasonable to suppose that the parties intended to restrict the building of a fence across the front of this lot to a line forty-two feet away from the sidewalk. This is so obvious that it removes all doubt as to whether the erection of a billboard was contrary to the covenant because standing on the same legal plane as that of a fence. From a careful consideration of the authorities herein specifically mentioned, and the immense array included in the authorities cited, we conclude that a billboard such as that described in this case is not, as a matter of law, "a building of any character." In each instance, whether it is a building in violation of a building restriction depends upon the wording of the restriction, strictly construed, from the facts of the particular case. We readily agree that a billboard erected so near a residence as indicated in this suit would be offensive and objectionable to those who reside nearby, but that is not the question now before us. We have only to declare the law as it is. In this case the trial judge was authorized to find that the erection of the billboard in question would not constitute a violation of the building restriction, and the refusal to grant an injunction prohibiting such erection will not be interfered with by this court.

*Judgment affirmed. All the Justices concur.*