21138. WILLIAMS *et al.* v. WALDROP.

Argued January 9, 1961—Decided February 9, 1961—Rehearing denied February 23, 1961.

*McCord & Cooper, William H. Cooper, Jr.,* for plaintiffs in error.

*John R. McCannon, Kemp & Watson,* contra.

Almand, Justice. The exception here is to an order sustaining a general demurrer to a petition seeking injunctive relief. This is a case involving the enforcement of a restrictive covenant by the

purchasers of lots in a real-estate subdivision as to the use of the lots by the owner of the unsold lots in the subdivision.

The petition states the following case: The defendant Waldrop filed and had recorded in the office of the Clerk of Clayton County Superior Court a document which recited that he was the owner of certain specified lands in Clayton County; that, in order to protect the purchasers of the property, "the following restrictions are hereby set up and shall apply to all sales of land by Manse Waldrop *when said restrictions are specifically referred to* in deeds from Manse Waldrop to purchaser." (Italics ours). One of the restrictions being "the property herein conveyed shall not be used otherwise than for residential purposes . . . No apartment . . . shall be erected or maintained thereon." Some of the plaintiffs purchased their property from the defendant, and others from his successors in title. All their deeds specially recited that the lots were sold subject to the recorded restrictive covenant and were part of the lands recited therein. The defendant has caused a portion of the lands which he has not sold to be zoned for the erection of multi-unit apartments, and is preparing to use such lands by building apartments thereon, and thereby violate the restrictive covenant, to the damage and injury of the plaintiffs.

■ Where the owner of land adopts a general scheme of dividing his land into lots for the purpose of selling them under express restrictions without reservations or limitations as to the use of the lots, and the restrictive covenants are for the benefit of the land retained, such a covenant as well as the lots sold mutually applies to all parties inter sese. However, where the owner subdivides his land into lots, and the restrictions imposed by him on the use of the lots are limited only to those lots where the deeds to purchasers specifically incorporate the restrictions, and are not expressly made applicable to all lands in the subdivision, to be sold or retained, such restrictions would apply to the unsold lots of the owner only by implication. In such a situation the restrictive clause must be construed in the light of the other facts of the record and intention of the parties. Limitations or restrictions as to the use of property by the owner are not favored and must be strictly construed. See *Randall v.*

*Atlanta Advertising Service*, 159 Ga. 217 (125 S. E. 462); *Campbell v. Empire Land Co.*, 163 Ga. 815 (137 S. E. 240); *Thompson v. Glenwood Community Club*, 191 Ga. 196 (12 S. E. 2d 623); *Wardlaw v. Southern Ry. Co.*, 199 Ga. 97 (2) (33 S. E. 2d 304); Allen v. City of Detroit, 167 Mich. 464 (133 N. W. 317, 36 L. R. A. (NS) 890).

In the instant case the restrictions imposed by the owner on the lots he was selling as to the use of lots for residential purposes, and forbidding the erection and maintenance of an apartment, applied only to those lots sold by the owner where the deed to a purchaser specifically referred to the restrictive covenant. The owner thereby reserved the right to sell lots and make deeds not specifically incorporating the covenant thereto. Since it clearly appears that it was the intent of the defendant that the restrictions would apply only where there was a sale of a lot and the restrictions were specifically incorporated in the deed to the purchaser, he impliedly retained the right to use the unsold lots for purposes other than a residential use and could erect an apartment on a portion of the unsold property.

■ The plaintiff, however, insists that, in view of the allegations in the amendment to the petition—"That the said restrictions as above set out were placed upon the land in order to sell lots therein to better advantage and to secure better prices and intended to and did, with respect to the said land, establish a general building scheme and development plan, and thereby induced plaintiffs and many persons in the subdivision to purchase the lots therein, and that plaintiffs and others to whom lots were sold bought upon the faith and representations from the defendant that restrictions would be carried out as to the entire tract. That the said property of defendant on which he desires to construct apartment houses lies in and is part of the said property described in said restrictive covenant, and though not conveyed, is subject to the same restrictions as other property conveyed by the defendant to plaintiffs and others, it being the clear intent of the said covenant to protect all lots in the said property"— the defendant is estopped from asserting that the restrictions do not apply to lots retained by him.

With this contention we can not agree. At the time the plain-

tiffs or their predecessors in title bought their lots, the restrictive provisions were of public record and they had either actual or constructive notice of them. It is essential to the doctrine of estoppel in pais that the party claiming to have been influenced by the conduct, representation, or declarations of the vendor to purchase real estate was himself, not only destitute of knowledge of the true state of the title, but also of a convenient and available means of acquiring such knowledge. The condition of the title in the case at bar was known to the plaintiffs or they had the means of ascertaining the truth at the time they purchased their lots. See *Elliott v. Keith,* 102 Ga. 117 (29 S. E. 155); *Carter v. Copeland,* 147 Ga. 417 (94 S. E. 225); *Bennett v. Davis,* 201 Ga. 58 (39 S. E. 2d 3).

The court did not err in sustaining the general demurrer and dismissing the petition.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., and Head, P. J., who dissent.*

DUCKWORTH, Chief Justice, dissenting. The recorded declared development plan expressly states that the restriction to residential uses is for the purpose of protecting purchasers of said property. This obviously was intended to enable the developer to receive higher prices for the lots. It was enough to bind every lot in the subdivision to its terms, whether expressed in the deeds or not. But the further provision therein that it would become binding when expressed in the deeds, taken literally and apart from the first portion, would nullify the first portion. Sound construction requires consideration of the entire document, and a construction, if the language will permit, to effectuate the intention. This would forbid the majority construction, which gives effect to the latter provision despite the fact that they thereby render the former, which expresses an intent, utterly meaningless. It will bear a construction that the latter was merely an erroneous conclusion of law that insertion in the deeds was necessary to render the restrictions binding, and by so construing it the only possible purpose in writing it, to wit, restrictions to protect the purchasers, is effectuated. The legal opinion is erroneous and may be disregarded. To do so does not militate against the clear intentions.

But if the foregoing construction, to which I know of no exception, is rejected, we then have an alleged verbal promise of the developer to sell only under restrictions to residential use, which, under *Atlanta Assn. of Baptist Churches v. Cowan*, 183 Ga. 187 (188 S. E. 21), *Atlanta Assn. of Baptist Churches v. Cowan*, 186 Ga. 10 (196 S. E. 780), and *Phillips v. Ingram*, 163 Ga. 580 (136 S. E. 785), is valid and enforceable.

The virtue of the rules this dissent adheres to is illustrated by the facts in this case. The complainants have paid their money to the developer on a restriction price basis and he now seeks, while enjoying the fruits of enhanced value from the restrictions, to enrich himself further by violating those restrictions regardless of the loss inflicted upon those who paid the premium prices for the restrictions.

To construe the recorded restrictions as the majority do is to attribute to the owner the intention thereby to take money from purchasers by means of a trick document. Had his intention been as the majority say it was, to freely and arbitrarily decide when executing each deed whether or not any restrictions would be written therein, then the recorded document is without meaning, and serves only to deceive, mislead, and unjustly burden purchasers with costs that could profit them nothing. It is charitable to the developer to construe that restriction so as to give it a legitimate meaning rather than as a lure to entrap innocent purchasers. For the foregoing reasons I dissent.

Mr. Presiding Justice Head concurs in this dissent.